

Amanda Garcia (Bar No. 248462)
Andrea Kopecky (Bar No. 276366)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, California 94103
Telephone: (415) 856-0444
Facsimile: (415) 856-0443
Email: amanda@baykeeper.org
Email: andrea@baykeeper.org

Attorneys for Plaintiff:
SAN FRANCISCO BAYKEEPER

**FILED**
APR 15 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

**CV 13 1695**

HRL

SAN FRANCISCO BAYKEEPER, a non-profit corporation,

Plaintiff,

v.

PREMIER RECYCLE COMPANY,

Defendant.

Civil No. _____

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et. seq.)

COMPLAINT

San Francisco Baykeeper ("Baykeeper"), by and through its counsel, hereby alleges:

## I.   JURISDICTION AND VENUE

1.     This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. section 1251 *et seq.* (the "Clean Water Act" or the "CWA"). This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to section 505(a)(1) of the CWA, 33 U.S.C. section 1365(a)(1), 28 U.S.C. section 1331 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States), and 28 U.S.C. section 2201.

2.     On February 11, 2013, Baykeeper provided notice of violations of the CWA by Defendant Premier Recycle Company ("Premier Recycle") and of Baykeeper's intent to file suit against Premier Recycle ("Notice Letter") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board"); the U.S. Attorney General (collectively "state and federal agencies"), and Defendant as required by the CWA, 33 U.S.C. § 1365(b)(1)(A). A copy of the Notice Letter is attached as Exhibit 1.

3.     More than sixty days have passed since the Notice Letter was mailed to Premier Recycle and the state and federal agencies. Neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. No claim in this action is barred by any prior administrative action pursuant to section 309(g) of the CWA, 33 U.S.C. § 1319(g).

4.     Venue is proper in the Northern District of California pursuant to section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## II.   INTRADISTRICT ASSIGNMENT

5.     Intradistrict assignment of this matter to the San Jose Division of the Court is appropriate pursuant to Civil Local Rule 3-2(c). The events or omissions which give rise to

COMPLAINT                                                                                          Page 1

1 Baykeeper's claims occurred in Santa Clara County, which is under the jurisdiction of the San Jose
2 branch of the Northern District of California.

3 **III.    INTRODUCTION**

4          6.       This Complaint seeks relief for alleged unlawful discharges of pollutants from Premier
5 Recycle's facility, located at 260 Leo Avenue, San Jose, California 95112 (the "Facility"), in violation
6 of the Clean Water Act and the State of California's General Permit No. CAS000001, Water Quality
7 Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit"), and
8 into waters of the United States.

9          7.       Violations of the Clean Water Act and the Industrial Stormwater Permit by numerous
10 industrial sites are recognized as a leading cause of significant, cumulative impacts to the water quality
11 of San Francisco Bay.  With every rainfall event, hundreds of millions of gallons of polluted rainwater
12 flow from local industrial facilities, such as the Facility, and pour into storm drains, into local
13 tributaries, and into the Bay. The consensus among agencies and water quality specialists is that
14 stormwater pollution accounts for more than half of the total pollution entering the marine
15 environment each year.

16          8.       Stormwater runoff from industrial sites such as the Facility cause harm to humans and
17 aquatic life. In particular, stormwater contains suspended sediment and heavy metals such as lead,
18 mercury, copper, iron, zinc, tin, nickel, and aluminum.  Exposure and ingestion of heavy metals can
19 cause health problems in people and aquatic animals, including neurological and reproductive effects.
20 Fish are widely used to evaluate the health of aquatic systems because pollutants accumulate in fish,
21 which are an important part of aquatic food chains.  Heavy metals have been shown to alter
22 physiological activity in tissues and blood of fish.

23          9.       High concentrations of suspended solids ("TSS") degrade optical water quality by
24 reducing water clarity and decreasing light available to support photosynthesis.  TSS have been shown
25 to alter predator-prey relationships (for example, turbid water might make it difficult for fish to see
26 their prey). Deposited solids alter habitat for fish, aquatic plants, and benthic organisms. TSS can also
27 be harmful to aquatic life because numerous pollutants, including metals and PAHs, are adsorbed onto
28

1  TSS. Thus, higher concentrations of TSS mean higher concentrations of toxins associated with those
2  sediments.

3      10.    Stormwater from facilities that process construction debris and other materials for
4  recycling, such as the one operated by Premier Recycle, contains heavy metal pollutants such as
5  aluminum, copper, iron, and zinc, as well as high concentrations of suspended solids. Inorganic
6  sediments, including settleable matter and suspended solids, have been shown to negatively impact
7  species richness, diversity, and total biomass of filter feeding aquatic organisms on bottom surfaces.
8  Metals such as copper and iron have been shown to accumulate in aquatic organisms and cause
9  negative effects on physiology and reproduction.

10  **IV.**   **PARTIES**

11      11.    Plaintiff Baykeeper is a non-profit public benefit corporation organized under the laws
12  of the State of California with its main office in San Francisco, California. Baykeeper members live
13  and/or recreate in and around the San Francisco Bay area. Baykeeper is dedicated to protecting the
14  water quality of San Francisco Bay for the benefit of its ecosystems and communities. To further
15  these goals, Baykeeper actively seeks federal and state agency implementation of the Clean Water Act,
16  and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

17      12.    Members of Baykeeper, including citizens, taxpayers, property owners, and residents,
18  live, work, travel, and recreate in or near San Francisco Bay and its tributaries, into which Premier
19  Recycle discharges pollutants. These Baykeeper members use and enjoy San Francisco Bay and its
20  tributaries for recreational, educational, scientific, conservation, aesthetic, and spiritual purposes.
21  Premier Recycle's discharges of stormwater containing pollutants impair each of these uses. Thus, the
22  interests of Baykeeper's members have been, are being, and will continue to be adversely affected by
23  Premier Recycle's failure to comply with the Clean Water Act and the Industrial Stormwater Permit.

24      13.    Defendant Premier Recycle is a company that is actively doing business in the state of
25  California, with its principal place of business located in San Jose, California.

26  **V.**   **REGULATORY BACKGROUND**

27      **Clean Water Act**

28

COMPLAINT                                                    Page 3

14.     CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge is in compliance with various enumerated CWA sections. Among other things, CWA section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to CWA section 402, 33 U.S.C. § 1342.

15.     CWA section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own EPA-approved permit program for discharges. In California, the State Board and its nine Regional Boards have approval from EPA to administer an NPDES permit program for the State. The State Board and Regional Boards issue individual and general NPDES permits regulating water pollutant discharges from various categories of dischargers.

16.     CWA section 402(p), 33 U.S.C. § 1342(p), requires that NPDES permits be issued for stormwater discharges associated with industrial activities.

17.     CWA section 301(b) requires that, by March 31, 1989, all point source dischargers, including those discharging polluted stormwater, must achieve technology based effluent limitations based upon Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. *See* 33 U.S.C. § 1311(b); 40 C.F.R. §§ 125.3(a)(2)(ii), 125.3(a)(2)(iii), 125.3(a)(2)(iii).

18.     CWA section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. § 1365(a)(1); *see* 33 U.S.C. § 1362(5).

19.     CWA section 505(a) authorizes a citizen suit action for injunctive relief. 33 U.S.C. § 1365(a).

20.     CWA violators are subject to an assessment of civil penalties of up to $32,500 for all violations occurring on or after March 15, 2004 through January 12, 2009, and $37,500 per day per violation for violations occurring after January 12, 2009. CWA § 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. §§ 19.1-19.4.

**State Regulations**

COMPLAINT                                                                                    Page 4

21.     Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality Standards, including water quality objectives and beneficial uses for navigable waters of the United States. The CWA prohibits discharges from causing or contributing to a violation of such state Water Quality Standards. *See* 33 U.S.C. § 1311(b)(1)(c), 40 C.F.R. §§ 122.4(a) and (d), 40 C.F.R. § 122.44(d)(1).

22.     The State of California regulates water quality through the State Board and nine Regional Boards, and each Regional Board maintains a separate Water Quality Control Plan which contains Water Quality Standards for water bodies within its geographic area.

23.     The San Francisco Bay Regional Water Quality Control Board has adopted the "San Francisco Bay Basin (Region 2) Water Quality Control Plan (Basin Plan)" (hereafter "Basin Plan"), as amended by Resolution No. R2-2010-0100, setting forth the beneficial uses and Water Quality Standards for San Francisco Bay and its tributaries.

24.     The Basin Plan sets forth, among other things, narrative Water Quality Standards for floating material, oil and grease, sediment, settleable matter, and suspended materials, and sets forth numeric Water Quality Standards for pH, arsenic, cadmium, chromium VI, copper, cyanide, lead, mercury, nickel, selenium, silver, tributyltin, zinc, and PAHs. *See* Basin Plan §§ 3.3.6, 3.3.7, 3.3.9, 3.3.12-3.3.14, 3.3.21, and Table 3-3. The Basin Plan also includes site specific objectives ("SSO"), which are Water Quality Standards for specific sites, for certain pollutants of concern, including copper and nickel. Basin Plan Table 3-3A.

25.     In addition, EPA has promulgated Water Quality Standards for toxic priority pollutants in all California water bodies (the "California Toxics Rule" or "CTR"), which apply to San Francisco Bay and its tributaries, unless expressly superseded by the Basin Plan. 65 Fed. Reg. 31682 (May 18, 2000), 40 C.F.R. § 131.38.

**The General Industrial Stormwater Permit**

26.     In California, the State Board has elected to issue a single, statewide general permit applicable to all stormwater discharges associated with industrial activity. *See* NPDES General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit"). The Industrial Stormwater

COMPLAINT                                                                                          Page 5

1    Permit is an NPDES permit pursuant to CWA section 402(p), 33 U.S.C. § 1342(p).  To discharge

2    stormwater lawfully in California, industrial dischargers must secure coverage under the Industrial

3    Stormwater Permit and comply with its terms or obtain and comply with an individual NPDES permit.

4    Industrial Stormwater Permit, pg II.

5         27.    Violations of the Industrial Stormwater Permit are also violations of the CWA.

6    Industrial Stormwater Permit, Order Part C(1).

7         28.    The Industrial Stormwater Permit contains certain absolute prohibitions.  Discharge

8    Prohibition A(1) of the Industrial Stormwater Permit prohibits the direct or indirect discharge of

9    materials other than stormwater ("non-stormwater discharges"), which are not otherwise authorized by

10   an NPDES permit, to the waters of the United States.  Industrial Stormwater Permit, Order Part A(1).

11   Discharge Prohibition A(2) of the Industrial Stormwater Permit prohibits stormwater discharges that

12   cause or threaten to cause pollution, contamination, or nuisance.  *Id.* at Order Part A(2).  Receiving

13   Water Limitation C(1) of the Industrial Stormwater Permit prohibits discharges that adversely impact

14   human health or the environment.  *Id.* at Order Part C(1).  Receiving Water Limitation C(2) of the

15   Industrial Stormwater Permit prohibits discharges that cause or contribute to an exceedance of any

16   applicable water quality standard contained in a Statewide Water Quality Control Plan or the

17   applicable Regional Board's Basin Plan.  *Id.* at Order Part C(2).

18        29.    Under the CWA and the Industrial Stormwater Permit, dischargers must employ

19   measures to reduce or eliminate stormwater pollution that constitute BAT and BCT. 33 U.S.C. §

20   1311(b); Industrial Stormwater Permit, Order Part B(3).  EPA has developed Benchmarks that are

21   objective guidelines to evaluate whether a permittee's Best Management Practices ("BMPs") achieve

22   compliance with the BAT/BCT standards as required by Effluent Limitation B(3).  *Id.*; NPDES Storm

23   Water Multi-Sector General Permit for Industrial Activities ("Multi-Sector Permit"), 65 Federal

24   Register 64746, 64766 (2000); Multi-Sector Permit, 73 Federal Register 56572, 56573 (2008)

25   (incorporating Fact Sheet, p. 103, available at http://www.epa.gov/npdes/stormwater/msgp).

26        30.    Dischargers must develop and implement a Storm Water Pollution Prevention Plan

27   ("SWPPP") at the time industrial activities begin.  Industrial Stormwater Permit, Section A(1)(a) and

28   Order Part E(2).  The SWPPP must identify and evaluate sources of pollutants associated with

---

COMPLAINT                                                                                    Page 6

1   industrial activities that may affect the quality of storm and authorized non-stormwater discharges

2   from the facility. *Id.* at Section A(2). The SWPPP must identify and implement site-specific BMPs to

3   reduce or prevent pollutants associated with industrial activities in stormwater and authorized non-

4   stormwater discharges. *Id.* The SWPPP must include BMPs that achieve pollutant discharge

5   reductions attainable via BAT and BCT. *Id.* at Order Part B(3).

6          31.    The SWPPP must include: a narrative description and summary of all industrial

7   activity, potential sources of pollutants, and potential pollutants; a site map indicating the stormwater

8   conveyance system, associated points of discharge, direction of flow, areas of actual and potential

9   pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and

10  pollutant control measures; a description of stormwater management practices; a description of the

11  BMPs to be implemented to reduce or prevent pollutants in stormwater discharges and authorized non-

12  stormwater discharges; the identification and elimination of non-stormwater discharges; the location

13  where significant materials are being shipped, stored, received, and handled, as well as the typical

14  quantities of such materials and the frequency with which they are handled; a description of dust and

15  particulate-generating activities; and a description of individuals and their current responsibilities for

16  developing and implementing the SWPPP. Industrial Stormwater Permit, Sections A(1-10).

17         32.    The Industrial Stormwater Permit also requires facility operators to properly operate

18  and maintain any facilities and systems of treatment and control installed or used to achieve

19  compliance with the conditions of the Industrial Stormwater Permit and requirements of the SWPPP at

20  all times. Industrial Stormwater Permit, Section C: Standard Provisions. The SWPPP and site maps

21  must be assessed annually and revised as necessary to insure accuracy and effectiveness. *Id.* at

22  Section A(1) and Sections B(3-4).

23         33.    Facility operators are required to develop and implement a monitoring and reporting

24  program ("MRP") when industrial activities begin at a facility. Industrial Stormwater Permit at

25  Section B: Monitoring Program and Reporting Requirements (1) and Order Part E(3). The MRP must

26  ensure that stormwater discharges are in compliance with the Discharge Prohibitions, Effluent

27  Limitations, and Receiving Water Limitations specified in the Industrial Stormwater Permit. *Id.* at

28  Section B(2). The MRP must ensure that practices at the facility to prevent or reduce pollutants in

COMPLAINT                                                                                      Page 7

1  stormwater and authorized non-stormwater discharges are evaluated and revised to meet changing

2  conditions at the facility, including revision of the SWPPP. *Id.*

3       34.    Pursuant to the monitoring and reporting requirements of the Industrial Stormwater

4  Permit, facility operators must conduct ongoing visual observations of stormwater and non-stormwater

5  discharges and record responsive measures taken to eliminate unauthorized non-stormwater and to

6  reduce or prevent pollutants in stormwater and authorized non-stormwater discharges. Industrial

7  Stormwater Permit at Sections B(3-4). Facility operators must collect samples of stormwater

8  discharges from all locations where stormwater may be discharged from the facility. *Id.* at Sections

9  B(5) and (7). Stormwater samples must be analyzed for pH, total suspended solids, total organic

10  carbon (or oil and grease as a substitute), specific conductance, and toxic chemicals and other

11  pollutants which are likely to be present in significant quantities in stormwater discharging from the

12  facility. *Id.* at Section B(5).

13  **VI.    STATEMENT OF FACTS**

14       35.    Premier Recycle operates a facility located in San Jose, California, at 260 Leo Avenue

15  (the "Facility").

16       36.    The Facility is regulated by the Industrial Stormwater Permit.

17       37.    The Facility processes and recycles construction debris and other materials.

18       38.    Operations at the Facility generally include, but are not limited to, the following: 1)

19  collecting, sorting, processing, recycling, and transporting construction debris and other materials, 2)

20  storage of recyclable and waste materials, and 3) vehicle and equipment operation.

21       39.    Some operations at the Facility occur outdoors and are causing pollutants to be exposed

22  to rainfall.

23       40.    Vehicles and equipment at the Facility expose many other sources of pollution to the

24  elements, including gasoline, diesel fuel, anti-freeze, battery fluids, and hydraulic fluids.

25       41.    The types of pollutants that the Facility releases into the immediate environment

26  include, among others: dust, debris, and total suspended solids ("TSS"); toxic metals such as

27  aluminum, copper, iron, lead, and zinc; petroleum products including oil, gasoline, grease, and diesel

28  fuel; and chemical admixtures, battery fluids, acids, solvents, and pH-affecting substances.

42.    The industrial materials stored and the pollutants generated at the Facility are exposed to stormwater flows.

43.    Activities at the Facility generate significant dust, debris, and particulate matter, which contain pollutants and settle on surfaces within the Facility, on the roof, and within the yard. During rain events, this pollution washes off of those surfaces and into nearby storm drains which discharge to Coyote Creek and San Francisco Bay.

**Premier Recycle's Activities Contributing to CWA Violations**

44.    Premier Recycle has not developed and/or implemented an adequate SWPPP at the Facility.

45.    Premier Recycle has not developed and/or implemented BMPs that adequately minimize the exposure of pollutants to stormwater at the Facility.

46.    Premier Recycle has not developed and/or implemented BMPs at the Facility that adequately control and minimize polluted runoff from the Facility.

47.    Premier Recycle has not developed and/or implemented BMPs at the Facility that adequately treat and remove pollutants in stormwater prior to discharge.

48.    Premier Recycle has not developed and/or implemented adequate measures to reduce or eliminate stormwater pollution that constitute the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Pollutant Control Technology ("BCT").

49.    Premier Recycle has not developed and/or implemented BMPs at the Facility to meet EPA Benchmarks or applicable Water Quality Standards.

50.    Premier Recycle has not adequately evaluated and revised the Facility SWPPP to address these failures. Premier Recycle has also failed to properly operate and maintain the structures and systems that have been put in place at the Facility to achieve compliance with the Industrial Stormwater Permit and its SWPPP requirements.

51.    Premier Recycle has not developed and/or implemented an adequate MRP at the Facility.

52.    Premier Recycle's monitoring and reporting activities have not resulted in practices that adequately reduce or prevent pollutants from discharging from the stormwater flows from the Facility.

COMPLAINT                                                                                          Page 9

53. Premier Recycle's monitoring activities have not effectively identified compliance problems at the Facility or resulted in effective revision of the SWPPP.

54. Due to Premier Recycle's lack of effective pollution prevention measures, its failure to implement effective BMPs, and its failure to implement an effective monitoring and reporting program, stormwater from the Facility becomes polluted with many constituents. Dust and debris; toxic metals such as aluminum, copper, iron, and zinc; petroleum products including fuels and oil, acids and solvents; and TSS and pH-affecting substances become entrained in stormwater when such water flows over and across the outdoor areas of the Facility. This polluted stormwater is discharged into Coyote Creek and San Francisco Bay, waters of the United States, via storm drains near the Facility.

55. Premier Recycle's own stormwater sampling indicates that Premier Recycle's discharges of stormwater are consistently contaminated with higher levels of pollutants than are permissible under the Industrial Stormwater Permit.

56. Premier Recycle's own stormwater sampling indicates that Premier Recycle's discharges of stormwater are consistently contaminated with higher levels of pollutants than are permissible under the Basin Plan.

57. Premier Recycle's own stormwater sampling indicates that Premier Recycle's discharges of stormwater are consistently contaminated with higher levels of pollutants than are permissible under the CTR.

58. Premier Recycle's own stormwater sampling indicates that Premier Recycle's discharges of stormwater are consistently contaminated with higher levels of pollutants than are consistent with BMPs that constitute BAT and/or BCT.

59. Premier Recycle's repeated stormwater exceedances of EPA Benchmarks over the past five years for pollutants including pH, electrical conductivity, aluminum, copper, iron, and zinc indicate that Premier Recycle has failed and continues to fail to meet BAT/BCT.

VII. **CLAIMS**

**FIRST CLAIM FOR RELIEF**

**Discharges in Violation of Permit Prohibitions of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. § 1311)**

60.     Plaintiff incorporates the allegations contained in all preceding paragraphs as though fully set forth herein.

61.     Since at least February 11, 2008, Premier Recycle has been discharging polluted stormwater from the Facility in violation of the prohibitions of the Industrial Stormwater Permit during every significant rain event (defined by the United States Environmental Protection Agency as a rainfall event generating 0.1 inches or more of rain). *See* Exhibit 1, Notice Letter at Attachment 3.

62.     The polluted stormwater discharged from the Facility during every significant rain event contains pollutants harmful to fish, plants, birds, and human health that have adversely affected, and continue to adversely affect, human health and the environment in violation of Receiving Water Limitation C(1) of the Industrial Stormwater Permit.

63.     Discharges of polluted stormwater from the Facility have in the past caused, and will continue to cause, pollution, contamination, and/or nuisance to the waters of the United States in violation of Discharge Prohibition A(2) of the Industrial Stormwater Permit and the Water Quality Standards set forth in the Basin Plan.

64.     Discharges of polluted stormwater from the Facility have in the past caused or contributed to, and continue to cause or contribute to, exceedances of Water Quality Standards in violation of Receiving Water Limitation C(2) of the Industrial Stormwater Permit including sediment, settleable matter, suspended materials, pH, copper, and zinc.

65.     Each day since at least February 11, 2008 that Premier Recycle has discharged polluted stormwater from the Facility in violation of the Industrial Stormwater Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

66.     By committing the acts and omissions alleged above, Premier Recycle is subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

67.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at

COMPLAINT                                                                                      Page 11

1    law.

2        68.    An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an

3    actual controversy exists as to the rights and other legal relations of the Parties.

4        Wherefore, Plaintiff prays for judgment against Premier Recycle as set forth hereafter.

5                            **SECOND CLAIM FOR RELIEF**

6      **Discharge in Violation of Effluent Limitations of the Industrial Stormwater Permit**

7                    **(Violations of 33 U.S.C. § 1311)**

8        69.    Plaintiff incorporates the allegations contained in all preceding paragraphs as though

9    fully set forth herein.

10       70.    Premier Recycle has discharged and continues to discharge stormwater from the

11    Facility containing levels of pollutants that do not achieve compliance with the BAT/BCT

12    requirements during every significant rain event occurring from February 11, 2008 through the

13    present. Premier Recycle's failure to develop and/or implement BMPs that achieve the pollutant

14    discharge reductions attainable via BAT or BCT at the Facility is a violation of Effluent Limitation

15    B(3) of the Industrial Stormwater Permit and the CWA. *See* Industrial Stormwater Permit, Order Part

16    B(3); 33 U.S.C. § 1311(b).

17       71.    Every day since at least February 11, 2008 that Premier Recycle has discharged

18    stormwater containing pollutants in violation of Effluent Limitation B (3), Premier Recycle has failed

19    to develop or implement BMPs that achieve pollutant discharge reductions attainable via BAT or BCT

20    at the Facility, in violation of the Industrial Stormwater Permit. Each day is a separate and distinct

21    violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

22       72.    Premier Recycle's CWA violations described in the paragraphs above will continue in

23    the future until Premier Recycle develops and implements BMPs at the Facility that achieve pollutant

24    discharge reductions attainable via BAT and BCT.

25       73.    By committing the acts and omissions alleged above, Premier Recycle is subject to an

26    assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d)

27    and 1365.

28       74.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

COMPLAINT                                                    Page 12

1  1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm

2  Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at

3  law.

4      75.    An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an

5  actual controversy exists as to the rights and other legal relations of the Parties.

6      Wherefore, Plaintiff prays for judgment against Premier Recycle as set forth hereafter.

7                          **THIRD CLAIM FOR RELIEF**

8  **Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan,**

9                  **in Violation of the Industrial Stormwater Permit**

10                      **(Violations of 33 U.S.C. § 1311)**

11      76.    Plaintiff incorporates the allegations contained in all preceding paragraphs as though

12  fully set forth herein.

13      77.    Premier Recycle has failed and continues to fail to develop and implement an adequate

14  SWPPP or implement all necessary revisions to the SWPPP for the Facility as required by the

15  Industrial Stormwater Permit, Section A: Storm Water Pollution Prevention Plan (1), (2), and (9).

16      78.    Premier Recycle has failed and continues to fail to develop or implement a SWPPP for

17  the Facility that includes BMPs that meet the requirements of Section A: Storm Water Pollution

18  Prevention Plan Requirements of the Industrial Stormwater Permit.

19      79.    Premier Recycle has failed and continues to fail to develop or implement a SWPPP at

20  the Facility that prevents discharges from violating the Discharge Prohibitions, Effluent Limitations,

21  and Receiving Water Limitations of the Industrial Stormwater Permit.

22      80.    Each day since February 11, 2008 that Premier Recycle has failed to adequately

23  develop and/or implement a SWPPP for the Facility in violation of the Industrial Stormwater Permit is

24  a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

25      81.    Premier Recycle has been in violation of the Industrial Stormwater Permit's SWPPP

26  requirements every day since February 11, 2008. Premier Recycle will continue to be in violation of

27  the SWPPP requirements each day that Premier Recycle fails to develop and fully implement an

28  adequate SWPPP for the Facility.

COMPLAINT                                                                      Page 13

82.     By committing the acts and omissions alleged above, Premier Recycle is subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

83.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at law.

84.     An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

Wherefore, Plaintiff prays for judgment against Premier Recycle as set forth hereafter.

## FOURTH CLAIM FOR RELIEF

**Failure to Develop and Implement an Adequate Monitoring and Reporting Program,**

**in Violation of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. § 1311)**

85.     Plaintiff incorporates the allegations contained in all preceding paragraphs as though fully set forth herein.

86.     Premier Recycle has failed and continues to fail to develop and implement an adequate monitoring and reporting program ("MRP") and implement all necessary revisions to the MRP at the Facility as required by the Industrial Stormwater Permit, Section B: Monitoring Program and Reporting Requirements and Order Part E(3).

87.     Premier Recycle's MRP has failed and continues to fail to ensure that discharges from the Facility are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations as required in Sections B(2) and (10) of the Industrial Stormwater Permit.

88.     Premier Recycle has failed and continues to fail to effectively identify compliance problems at the Facility or effectively revise the SWPPP to address such pollution problems as required by Sections B(2-4) of the Industrial Stormwater Permit.

89.     Each day since February 11, 2008 that Premier Recycle has failed to develop and implement an adequate MRP for the Facility in violation of the Permit is a separate and distinct

COMPLAINT                                                                                    Page 14

1    violation of CWA section 301(a), 33 U.S.C. § 1311(a).

2       90.     Premier Recycle has been in violation of the MRP requirements every day since

3    February 11, 2008. Premier Recycle will continue to be in violation of the MRP requirements each

4    day that Premier Recycle fails to develop and fully implement an adequate MRP for the Facility.

5       91.     By committing the acts and omissions alleged above, Premier Recycle is subject to an

6    assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d)

7    and 1365.

8       92.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

9    1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm

10    Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at

11    law.

12       93.     An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an

13    actual controversy exists as to the rights and other legal relations of the Parties.

14       Wherefore, Plaintiff prays for judgment against Premier Recycle as set forth hereafter.

15                   **FIFTH CLAIM FOR RELIEF**

16       **Unpermitted Discharge of Pollutants in Violation of CWA Section 301(a)**

17               **(Violations of 33 U.S.C. § 1311)**

18       94.     Plaintiff incorporates the allegations contained in all preceding paragraphs as though

19    fully set forth herein.

20       95.     Premier Recycle has discharged and continues to discharge pollutants from the Facility

21    in violation of the Industrial Stormwater Permit. Thus, Premier Recycle's discharges are the

22    unpermitted discharge of pollutants from the Facility to waters of the United States without a permit,

23    in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

24       96.     Premier Recycle has been in violation of CWA section 301(a) every day it has

25    discharged stormwater from the Facility to waters of the United States since February 11, 2008.

26    Premier Recycle will continue to be in violation of the CWA each day that they discharge stormwater

27    from the Facility to waters of the United States.

28       97.     By committing the acts and omissions alleged above, Premier Recycle is subject to an

COMPLAINT                                              Page 15

1  assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d)
2  and 1365.

3       98.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §
4  1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm
5  Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at
6  law.

7       99.     An action for declaratory relief is authorized by 28 U.S.C. section 2201(a) because an
8  actual controversy exists as to the rights and other legal relations of the Parties.

9       Wherefore, Plaintiff prays for judgment against Premier Recycle as set forth hereafter.

10                              **RELIEF REQUESTED**

11      Baykeeper respectfully requests this Court to grant the following relief:

12      1.     Declare Defendant Premier Recycle to have violated and to be in violation of
13  sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging
14  pollutants from the Facility in violation of a permit issued pursuant to Section 402 of the CWA, 33
15  U.S.C. § 1342, for failing to meet effluent limitations which include Best Available Technology
16  Economically Achievable ("BAT") and Best Conventional Pollutant Control Technology ("BCT")
17  requirements, and for failing to comply with all substantive and procedural requirements of the
18  following:

19           a.     The State of California's General Permit No. CAS000001, Water
20  Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater
21  Permit");

22           b.     The San Francisco Bay Basin (Region 2) Water Quality Control Plan
23  (Basin Plan), as amended by Resolution No. R2-2010-0100 ("Basin Plan"); and

24           c.     The California Toxics Rule, 65 Fed. Reg. 31682 (May 18, 2000), 40
25  C.F.R. § 131.38 ("CTR");

26      2.     Enjoin Premier Recycle from discharging pollutants from the Facility to storm
27  drains which discharge to Coyote Creek and San Francisco Bay;

28      3.     Enjoin Premier Recycle to restore all receiving waters damaged by Premier

COMPLAINT                                                      Page 16

1  Recycle's illegal discharges of pollutants from the Facility;

2         4.     Enjoin Premier Recycle from violating sections 301(a) and (b) of the Clean
3  Water Act at the Facility;

4         5.     Enjoin Premier Recycle from violating the substantive and procedural
5  requirements of the Industrial Stormwater Permit at the Facility;

6         6.     Enjoin Premier Recycle from violating the substantive and procedural
7  requirements of the Basin Plan at the Facility;

8         7.     Enjoin Premier Recycle from violating the substantive and procedural
9  requirements of the CTR at the Facility;

10         8.     Order Premier Recycle to pay civil penalties of up to $32,500 for all violations
11  between January 21, 2006 and through January 12, 2009, and $37,500 per day per violation for
12  violations occurring after January 12, 2009 in accordance with CWA Section 309(d), 33 U.S.C. §
13  1319(d) and 40 C.F.R. §§ 19.1-19.4 (2009).

14         9.     Award Plaintiff its costs (including reasonable attorney, witness, and consultant
15  fees) as authorized by the CWA, 33 U.S.C. § 1365(d);

16         10.    Award such other relief as this Court may deem appropriate.

17

18  Dated: 4/15/13                              Respectfully Submitted,

19

20                                             By: _Andrea L. Kopecky_
21                                             Andrea Kopecky
22                                             Attorney for Plaintiff
                                               SAN FRANCISCO BAYKEEPER
23

24

25

26

27

28

---

COMPLAINT                                                                          Page 17

# EXHIBIT 1



SAN FRANCISCO
# BAYKEEPER.

February 11, 2013

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

Robert Hill
Owner
Premier Recycle Company
348 Phelan Avenue
San Jose, CA 95112

Russell Rosales
Facility Operations
Premier Recycle Company
260 Leo Avenue
San Jose, CA 95112

**Re:   Notice of Violation and Intent to File Suit under the Clean Water Act**

Dear Sirs:

I am writing on behalf of San Francisco Baykeeper ("Baykeeper") to give notice that Baykeeper intends to file a civil action against the Premier Recycle Company ("Premier Recycle") for violations of the federal Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA") at its facility located at 260 Leo Avenue, San Jose, California 95112 (the "Facility").

Baykeeper is a non-profit public benefit corporation organized under the laws of California, with its office in San Francisco, California. Baykeeper's purpose is to preserve, protect, and defend the environment, wildlife, and natural resources of San Francisco Bay, its tributaries, and other waters in the Bay Area, for the benefit of local communities. Baykeeper has over two thousand members who use and enjoy San Francisco Bay and other waters for various recreational, educational, and spiritual purposes. Baykeeper's members' use and enjoyment of these waters are negatively affected by the pollution caused by Premier Recycle's operations.

This letter addresses Premier Recycle's unlawful discharge of pollutants from the Facility via stormwater into Coyote Creek, a tributary of San Francisco Bay. Specifically, Baykeeper's investigation of the Facility has uncovered significant, ongoing and continuous violations of the CWA and the National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12•DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit").

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), a citizen must give notice of his or her intent to file suit. 33 U.S.C. § 1365. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the State in which the violations occur. As required by section 505(b), this Notice of Violation and Intent to File Suit provides notice



Pollution hotline: 1 800 KEEP BAY
www.baykeeper.org

785 Market Street, Suite 850
San Francisco, CA 94103
Tel (415) 856-0444
Fax (415) 856-0443

Notice of Intent to File Suit
February 11, 2013
Page 2 of 10

to Premier Recycle of the violations that have occurred and which continue to occur at the Facility. After the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, Baykeeper intends to file suit in federal court against Premier Recycle under CWA section 505(a) for the violations described more fully below.

During the 60-day notice period, Baykeeper is willing to discuss effective remedies for the violations noticed in this letter. We suggest that Premier Recycle contact us within the next twenty (20) days so that these discussions may be completed by the conclusion of the 60-day notice period. Please note that we do not intend to delay the filing of a complaint in federal court even if discussions are continuing when the notice period ends.

## I.    THE LOCATION OF THE ALLEGED VIOLATIONS

### A. The Facility

Premier Recycle operates at 260 Leo Avenue in San Jose, California (the "Facility"). The approximately 2 acre site consists of one covered building and equipment, trucks, metal, and recyclable and scrap materials outdoors. Premier Recycle processes construction demolition materials for recycling, and handles approximately 8,500 tons of materials per year. Materials are delivered to a sorting area where they are sorted into four principal storage areas and various bins. Principal storing areas include: 1) wood products, 2) paper products, 3) residual waste materials such as concrete, plastics, wallboard, and insulation, and 4) metal storage for ferrous and non-ferrous metals. Materials at the Facility generally contain a wide variety of toxic pollutants including heavy metals such as aluminum, iron, lead, copper, nickel, and zinc; pollutants from electrical wastes; pollutants from vehicles including oils, transmission fluid, lubricants, brake fluid, hydraulic fluid, battery acid, and antifreeze; and others. Most of the processing and storage at the Facility appears to occur outside. Outdoor activities at the Facility expose rainfall to pollutants. Stormwater containing these pollutants flows into storm drains on site and storm drains in the adjacent street.

### B. The Affected Waters

Stormwater from the Facility discharges via storm drains into Coyote Creek, and, from there, into San Francisco Bay. San Francisco Bay and Coyote Creek are waters of the United States. The CWA requires that water bodies such as San Francisco Bay meet water quality objectives that protect specific "beneficial uses." The beneficial uses of the San Francisco Bay and its tributaries include commercial and sport fishing, estuarine habitat, fish migration, navigation, preservation of rare and endangered species, water contact and non-contact recreation, shellfish harvesting, fish spawning, and wildlife habitat. Contaminated stormwater from the Facility adversely affects the water quality of San Francisco Bay watershed and threatens the ecosystem of this watershed, which includes significant habitat for listed rare and endangered species.

## II.   THE ACTIVITIES AT THE FACILITY ALLEGED TO CONSTITUTE VIOLATIONS AND THE EFFLUENT LIMITATIONS VIOLATED

It is unlawful to discharge pollutants to waters of the United States, such as Coyote Creek and San Francisco Bay, without an NPDES permit or in violation of the terms and conditions of an NPDES permit. CWA § 301(a), 33 U.S.C. § 1311(a); *see also* CWA § 402(p), 33 U.S.C. § 1342(p) (requiring NPDES permit issuance for the discharge of stormwater associated with industrial activities). The Industrial Stormwater Permit authorizes certain discharges of stormwater, conditioned on compliance with its terms.

Premier Recycle submitted a Notice of Intent ("NOI") to be authorized to discharge stormwater from the Facility under the Industrial Stormwater Permit. However, information available to Baykeeper indicates that stormwater discharges from the Facility have violated several of the terms of the Industrial Stormwater Permit, thereby violating the CWA. *Id.* Apart from discharges that comply with the Industrial Stormwater Permit, the Facility lacks NPDES permit authorization for any other discharges of pollutants into waters of the United States.

### A. Discharges in Excess of BAT/BCT Levels

The Effluent Limitations of the Industrial Stormwater Permit prohibit the discharge of pollutants from the Facility in concentrations above the level commensurate with the application of best available technology economically achievable ("BAT") for toxic pollutants[1] and best conventional pollutant control technology ("BCT") for conventional pollutants.[2] Industrial Stormwater Permit, Order Part B(3). The EPA has published Benchmark values set at the maximum pollutant concentration present if an industrial facility is employing BAT and BCT, as described in Attachment 1 to this letter.[3]

Premier Recycle's self-reported exceedances of Benchmark values over the last five years, identified in Attachment 2 to this letter, indicate that Premier Recycle has failed and is failing to employ measures that constitute BAT and BCT for structural scrap and waste recycling facilities in violation of the requirements of the Industrial Stormwater Permit. Baykeeper alleges and notifies Premier Recycle that its stormwater discharges from the Facility have consistently contained and continue to contain levels of pollutants which exceed Benchmark values for aluminum, copper, iron, zinc, electrical conductivity, and pH, among other pollutants.

Further, based on information available to Baykeeper, Premier Recycle's self-reported data understates the pattern and extent of pollution coming from the Facility,

---

[1] BAT is defined at 40 C.F.R. § 442.23. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.
[2] BCT is defined at 40 C.F.R. § 442.22. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, oil and grease, pH, and fecal coliform.
[3] The Benchmark Values can be found at: http://www.epa.gov/npdes/pubs/msgp2008_finalpermit.pdf and http://cwea.org/p3s/documents/multi-sectorrev.pdf (Last accessed on 2/11/13).

because Premier Recycle only collected samples from one discharge point and failed to collect samples from more than one storm event in 2007-2008 and 2009-2010. In addition, Premier Recycle has only been sampling at the on-site storm drain found furthest from sources of industrial activities at the Facility. Thus, based on information available to Baykeeper, Premier Recycle's self-reported sample results do not reflect the full extent of pollution coming from the Facility.

Premier Recycle's ongoing discharges of stormwater containing levels of pollutants above EPA Benchmark values and BAT- and BCT-based levels of control also demonstrate that Premier Recycle has not developed and implemented sufficient Best Management Practices ("BMPs") at the Facility. Baykeeper's visual observations of the Facility further support the conclusion that the Facility's BMPs do not constitute BAT and BCT. For example, Premier Recycle stores construction debris containing metals and other pollutants outside and uncovered where they are exposed to rainfall. Proper BAT and BCT measures could include, but are not limited to, moving certain pollution-generating activities under cover or indoors, capturing and effectively filtering or otherwise treating all stormwater prior to discharge, frequent sweeping to reduce the build-up of pollutants on-site, and other similar measures.

Premier Recycle's failure to develop and/or implement adequate pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the Clean Water Act and the Industrial Stormwater Permit each and every day Premier Recycle discharges stormwater without meeting BAT/BCT. Baykeeper alleges that Premier Recycle has discharged stormwater containing excessive levels of pollutants from the Facility to Coyote Creek and San Francisco Bay during at least every significant local rain event over 0.1 inches in the last five years.[4] Attachment 3 compiles all dates in the last five (5) years when a significant rain event occurred. Premier Recycle is subject to civil penalties for each violation of the Industrial Stormwater Permit and the CWA within the past five (5) years.

### B. Discharges Impairing Receiving Waters

The Industrial Stormwater Permit's Discharge Prohibitions disallow stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance. *See* Industrial Stormwater Permit, Order Part A(2). The Industrial Stormwater Permit also prohibits stormwater discharges to surface or groundwater that adversely impact human health or the environment. *Id.* at Order Part C(1). Receiving Water Limitations of the Industrial Stormwater Permit prohibit stormwater discharges that cause or contribute to an exceedance of applicable Water Quality Standards ("WQS"). *Id.* at Order Part C(2). Applicable WQSs are set forth in the California Toxics Rule ("CTR")[5] and Chapter 3 of

---

[4] Significant local rain events are reflected in the rain gauge data available at http://cdec.water.ca.gov and http://lwf.ncdc.noaa.gov/oa/ncdc.html. (Last accessed on 2/11/13).
[5] The CTR is set forth at 40 C.F.R. § 131.38 and is explained in the Federal Register preamble accompanying the CTR promulgation set forth at 65 Fed. Reg. 31682.

Notice of Intent to File Suit
February 11, 2013
Page 5 of 10

the San Francisco Bay Basin (Region 2) Water Quality Control Plan ("Basin Plan").[6]
Exceedances of WQSs are violations of the Industrial Stormwater Permit, the CTR, and
the Basin Plan.

The Basin Plan establishes Water Quality Standards for San Francisco Bay and its
tributaries, including but not limited to the following:

- Waters shall not contain substances in concentrations that result in the
deposition of material that cause nuisance or adversely affect beneficial uses.

- Waters shall not contain suspended material in concentrations that cause
nuisance or adversely affect beneficial uses.

- Waters shall be free of changes in turbidity that cause nuisance or adversely
affect beneficial uses. Increases from normal background light penetration
or turbidity relatable to waste discharge shall not be greater than 10 percent
in areas where natural turbidity is greater than 50 NTU.

- All waters shall be maintained free of toxic substances in concentrations that
are lethal to or that produce other detrimental responses in aquatic
organisms.

- Surface waters shall not contain concentrations of chemical constituents in
amounts that adversely affect any designated beneficial use. See the Basin
Plan's Table 3-3 for specific marine water quality objectives for toxic
pollutants.[7]

Baykeeper alleges that Premier Recycle's stormwater discharges have caused or
contributed to exceedances of the Water Quality Standards ("WQS") set forth in the
Basin Plan and California Toxics Rule. These allegations are based on information
available to Baykeeper, including Premier Recycle's self-reported data submitted to the
Regional Board indicating exceedances of receiving water limits for copper and zinc. *See*
Attachment 2. As explained above, based on information available to Baykeeper, these
sample results do not fully reflect the extent of pollution coming from the Facility.

---

[6] The Basin Plan is published by the US Environmental Protection Agency ("EPA") at:
http://water.epa.gov/scitech/swguidance/standards/wqslibrary/upload/2009_03_16_standards_wqslibrary_c
a_ca_9_san_francisco.pdf (Last accessed on 2/11/13).
The Basin Plan is also published by the Regional Board at:
http://www.waterboards.ca.gov/sanfranciscobay/basin_planning.shtml#2004basinplan (Last accessed on
2/11/13).
[7] Basin Plan, Table 3-3 is presented in Attachment 4 and is available at:
http://www.waterboards.ca.gov/sanfranciscobay/water_issues/programs/planningtmdls/basinplan/web/tab/t
ab_3-03.pdf. (Last accessed on 2/11/13).

Notice of Intent to File Suit
February 11, 2013
Page 6 of 10

Baykeeper alleges that each day that Premier Recycle has discharged stormwater from the Facility, Premier Recycle's stormwater has contained levels of pollutants that exceeded one or more of the applicable WQS in San Francisco Bay. Baykeeper alleges that Premier Recycle has discharged stormwater exceeding WQS from the Facility to Coyote Creek and San Francisco Bay during at least every significant local rain event over 0.1 inches in the last five years. *See* Attachment 3. Each discharge from the Facility that has caused or contributed, or causes or contributes to an exceedance of an applicable WQS constitutes a separate violation of the Industrial Stormwater Permit and the CWA. Premier Recycle is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA within the past five (5) years.

### C. Failure to Develop and/or Implement an Adequate Storm Water Pollution Prevention Plan ("SWPPP")

The Industrial Stormwater Permit requires dischargers to develop and implement an adequate SWPPP. Industrial Stormwater Permit, Section A: Storm Water Pollution Prevention Plan Requirements, (1)(a). The Industrial Stormwater Permit also requires dischargers to make all necessary revisions to existing SWPPPs promptly. *Id.* at Order Part E(2).

The SWPPP must include, among other requirements, the following: a site map, a list of significant materials handled and stored at the site, a description and assessment of all potential pollutant sources, a description of the BMPs that will reduce or prevent pollutants in stormwater discharges, specification of BMPs designed to reduce pollutant discharge to BAT and BCT levels, a comprehensive site compliance evaluation completed each reporting year, and revisions to the SWPPP within 90 days after a facility manager determines that the SWPPP is in violation of any requirements of the Industrial Stormwater Permit. *See* Industrial Stormwater Permit Section A.

Based on information available to Baykeeper, Premier Recycle has failed to prepare and/or implement an adequate SWPPP and/or to revise the SWPPP to satisfy each of the requirements of Section A of Industrial Stormwater Permit. For example, Premier Recycle's SWPPP does not include, and Premier Recycle has not implemented, adequate BMPs designed to reduce pollutant levels in discharges to BAT and BCT levels in accordance with Section A(8) of the Industrial Stormwater Permit, as evidenced by the data in Attachment 2.

Accordingly, Premier Recycle has violated the Clean Water Act each and every day Premier Recycle has failed to develop and/or implement an adequate SWPPP meeting all of the requirements of Section A of the Industrial Stormwater Permit, and Premier Recycle will continue to be in violation every day until they develop and/or implement an adequate SWPPP. Premier Recycle is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring within the past five (5) years.

### D. Failure to Develop and Implement an Adequate Monitoring and Reporting Program ("MRP") and to Perform Annual Comprehensive Site Compliance Evaluations

The Industrial Stormwater Permit requires facility operators to develop and implement a Monitoring and Reporting Program. Industrial Stormwater Permit, Section B: Monitoring Program and Reporting Requirements, (1) and Order Part E(3). The Industrial Stormwater Permit requires that the MRP ensure that each facility's stormwater discharges comply with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the Industrial Stormwater Permit. *Id.* at Section B(2). Facility operators must ensure that their MRP practices reduce or prevent pollutants in stormwater and authorized non-stormwater discharges as well as evaluate and revise their practices to meet changing conditions at the facility. *Id.* This may include revising the SWPPP as required by Section A of the Industrial Stormwater Permit. The MRP must measure the effectiveness of BMPs used to prevent or reduce pollutants in stormwater and authorized non-stormwater discharges, and facility operators must revise the MRP whenever appropriate. *Id.* Facility operators are also required to provide an explanation of monitoring methods describing how the facility's monitoring program will satisfy these objectives. *Id.* at Section B(10).

Premier Recycle has been operating the Facility with an inadequately developed and/or inadequately implemented MRP, in violation of the substantive and procedural requirements set forth in Section B of the Industrial Stormwater Permit. For example, the data in Attachment 2 indicate that Premier Recycle's monitoring program has not ensured that stormwater discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations of the Industrial Stormwater Permit as required by Section B(2). The monitoring program has not resulted in practices at the Facility that adequately reduce or prevent pollutants in stormwater as required by Order Part B(2). Similarly, the data in Attachment 2 indicate that Premier Recycle's MRP has not effectively identified or responded to compliance problems at the Facility or resulted in effective revision of BMPs in use or the Facility's SWPPP to address such ongoing problems as required by Section B(2).

In addition, Premier Recycle's MRP is inadequate because Premier Recycle has been collecting stormwater samples that do not adequately reflect pollution coming from its industrial activities. Section B(7)(a) of the Industrial Stormwater Permit requires Premier Recycle to collect stormwater samples that "represent the quality and quantity of the facility's storm water discharges." Premier Recycle has six (6) storm drains on its property. Based on information available to Baykeeper, Premier Recycle is collecting stormwater from a single storm drain near the Facility entrance and furthest from industrial activity on site. Thus, each stormwater sample collected has not represented the quality and quantity of stormwater flowing from the industrial areas of the site.

As a result of Premier Recycle's failure to adequately develop and/or implement an adequate MRP at the Facility, Premier Recycle has been in daily and continuous violation of the Industrial Stormwater Permit and the CWA on each and every day for the

Notice of Intent to File Suit
February 11, 2013
Page 8 of 10

past five years. These violations are ongoing. Premier Recycle will continue to be in violation of the monitoring and reporting requirements each day that Premier Recycle fails to adequately develop and/or implement an effective MRP at the Facility. Premier Recycle is subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring for the last five (5) years.

### 5. Discharges Without Permit Coverage.

Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge is authorized by a NPDES permit issued pursuant to section 402 of the Clean Water Act. *See* 33 U.S.C. §§ 1311(a), 1342. In turn, Premier Recycle sought coverage for the Facility under the Industrial Stormwater Permit, which states that any discharge from an industrial facility not in compliance with the Industrial Stormwater Permit "must be either eliminated or permitted by a separate NPDES permit." Industrial Stormwater Permit, Order Part A(1). Because Premier Recycle has not obtained coverage under any separate NPDES permit, and has failed to eliminate discharges not permitted by the Industrial Stormwater Permit, each and every discharge from the Facility described herein not in compliance with the Industrial Stormwater Permit has constituted and will continue to constitute a discharge without CWA permit coverage in violation of section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

### IV. PERSONS RESPONSIBLE FOR THE VIOLATIONS

Premier Recycle Company is the person responsible for the violations at the Facility described above.

### V. NAME AND ADDRESS OF NOTICING PARTY

Our name, address, and telephone number is as follows:

San Francisco Baykeeper
785 Market Street, Suite 850
San Francisco, CA 94103
(415) 856-0444

### VI. COUNSEL

Baykeeper is represented by the following counsel in this matter, to whom all communications should be directed:

Andrea Kopecky
Amanda Garcia
San Francisco Baykeeper

Notice of Intent to File Suit
February 11, 2013
Page 9 of 10

785 Market Street, Suite 850
San Francisco, CA 94103
(415) 856-0444

Andrea Kopecky: (415) 856-0444 x110, andrea@baykeeper.org
Amanda Garcia: (415) 856-0444 x105, amanda@baykeeper.org

## VII. REMEDIES

Baykeeper intends, at the close of the 60-day notice period or thereafter, to file a citizen suit under CWA section 505(a) against Premier Recycle for the above-referenced violations. Baykeeper will seek declaratory and injunctive relief to prevent further CWA violations pursuant to CWA sections 505(a) and (d), 33 U.S.C. §1365(a) and such other relief as permitted by law. In addition, Baykeeper will seek civil penalties pursuant to CWA section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. section 19.4, against Premier Recycle in this action. The CWA imposes civil penalty liability of up to $32,500 per day per CWA violation for violations occurring from March 15, 2004 through January 12, 2009, and $37,500 per day per violation for violations occurring after January 12, 2009. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4 (2009). Baykeeper will seek to recover attorneys' fees, experts' fees, and costs in accordance with CWA section 505(d), 33 U.S.C. § 1365(d).

As noted above, Baykeeper is willing during the 60-day notice period to discuss effective remedies for the violations noted in this letter. Please contact me or Amanda Garcia to initiate these discussions.

Sincerely,

Andrea L. Kopecky
Associate Attorney
San Francisco Baykeeper

Notice of Intent to File Suit
February 11, 2013
Page 10 of 10

Cc:

| Lisa Jackson<br>Administrator<br>US EPA, Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Mail Code: 1101A<br>Washington, D.C. 20460 | Eric H. Holder, Jr.<br>Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001 |
| --- | --- |
| Jared Blumenfeld<br>Regional Administrator<br>U.S. EPA - Region 9<br>75 Hawthorne Street<br>San Francisco, CA 94105 | Thomas Howard<br>Executive Director<br>State Water Resources Control Board<br>1001 I Street<br>Sacramento, CA 95814 |
| Bruce Wolfe<br>Executive Officer<br>Regional Water Quality Control Board<br>San Francisco Bay Region<br>1515 Clay Street, Suite 1400<br>Oakland, CA 94612 | |

## Attachment 1: EPA Benchmarks

| Parameter | Units | Benchmark value |
|---|---|---|
| Biochemical Oxygen Demand | mg/L | 30 |
| Chemical Oxygen Demand (COD) | mg/L | 120 |
| Total Suspended Solids (TSS) | mg/L | 100 |
| Oil and Grease | mg/L | 15 |
| Nitrate + Nitrite Nitrogen | mg/L | 0.68 |
| Total Phosphorus | mg/L | 2 |
| pH | SU - low | 6 |
| pH | SU - high | 9 |
| Acrylonitrile | mg/L | 7.55 |
| Aluminum Total | mg/L | 0.75 |
| Ammonia Total (as N) | mg/L | 19 |
| Antimony, Total | mg/L | 0.64 |
| Arsenic Total | mg/L | 0.15 |
| Benzene | mg/L | 0.01 |
| Beryllium, Total | mg/L | 0.13 |
| Butylbenzyl Phthalate | mg/L | 3 |
| Chloride | mg/L | 860 |
| Copper Total | mg/L | 0.0636 |
| Dimethyl Phthalate | mg/L | 1 |
| Ethylbenzene | mg/L | 3.1 |
| Fluoranthene | mg/L | 0.042 |
| Fluoride | mg/L | 1.8 |
| Iron Total | mg/L | 1 |
| Lead Total | mg/L | 0.0816 |
| Manganese | mg/L | 1 |
| Mercury Total | mg/L | 0.0024 |
| Nickel Total | mg/L | 1.417 |
| PCB-1016 | mg/L | 0.000127 |
| PCB-1221 | mg/L | 0.1 |
| PCB-1232 | mg/L | 0.000318 |
| PCB-1242 | mg/L | 0.0002 |
| PCB-1248 | mg/L | 0.002544 |
| PCB-1254 | mg/L | 0.1 |
| PCB-1260 | mg/L | 0.000477 |
| Phenols, Total | mg/L | 1 |
| Pyrene | mg/L | 0.01 |
| Selenium Total | mg/L | 0.2385 |
| Silver Total | mg/L | 0.0318 |
| Toluene | mg/L | 10 |
| Trichloroethylene | mg/L | 0.0027 |
| Zinc Total | mg/L | 0.117 |
| Cyanide Total (as CN) | mg/L | 0.0636 |
| Magnesium Total | mg/L | 0.064 |
| Electrical Conductivity @ 25 Deg. C | umhos/cm | 200 |

## Attachment 2: Table of Violations for Premier Recycle Company

Table containing each stormwater sample result provided by Premier Recycle in which samples exceed Water Quality Standards (yellow), or EPA Benchmarks (green), or both (green). The EPA Benchmarks and Water Quality Standards are listed at the end of the table. All stormwater samples were collected during the past five years.

| No. | Sampling Location | Sampling Date | Parameter | | Value | Units | Wet Season |
|---|---|---|---|---|---|---|---|
| 1 | Sample point | 10/6/2011 | Electrical Conductivity @ 25 Deg. C | = | 1000 | umhos/cm | 2012-2011 |
| 2 | Sample point | 10/6/2011 | Aluminum Total | = | 2.9 | mg/L | 2012-2011 |
| 3 | Sample point | 10/6/2011 | Copper Total | = | 0.28 | mg/L | 2012-2011 |
| 4 | Sample point | 10/6/2011 | Iron Total | = | 3.1 | mg/L | 2012-2011 |
| 5 | Sample point | 10/6/2011 | Zinc Total | = | 1.9 | mg/L | 2012-2011 |
| 6 | Sample point | 12/20/2010 | Electrical Conductivity @ 25 Deg. C | = | 220 | umhos/cm | 2010-2011 |
| 7 | Sample point | 12/20/2010 | Aluminum Total | = | 1.2 | mg/L | 2010-2011 |
| 8 | Sample point | 12/20/2010 | Copper Total | = | 0.30 | mg/L | 2010-2011 |
| 9 | Sample point | 12/20/2010 | Iron Total | = | 1.2 | mg/L | 2010-2011 |
| 10 | Sample point | 12/20/2010 | Zinc Total | = | 0.32 | mg/L | 2010-2011 |
| 11 | Sample point | 10/13/2009 | Electrical Conductivity @ 25 Deg. C | = | 700 | umhos/cm | 2009-2010 |
| 12 | Sample point | 10/13/2009 | Aluminum Total | = | 0.87 | mg/L | 2009-2010 |
| 13 | Sample point | 10/13/2009 | Iron Total | = | 1.4 | mg/L | 2009-2010 |
| 14 | Sample point | 2/17/2009 | pH | = | 5.66 | SU | 2008-2009 |
| 15 | Sample point | 1/22/2009 | Copper Total | = | 0.013 | mg/L | 2008-2009 |
| 16 | Sample point | 2/20/2008 | Electrical Conductivity @ 25 Deg. C | = | 12000 | umhos/cm | 2007-2008 |
| 17 | Sample point | 2/20/2008 | Zinc Total | = | 0.18 | mg/L | 2007-2008 |
| 18 | Sample point | 2/20/2008 | Copper Total | = | 0.044 | mg/L | 2007-2008 |

**California Toxics Rule (CTR) Criterion Maximum Concentration, Freshwater or 2008 EPA benchmarks (Multi Sector General Permit; MSGP)**

| Parameter | Units | Benchmark value | Source |
|---|---|---|---|
| Chemical Oxygen Demand (COD) | mg/L | 120 | MSGP |
| Total Suspended Solids (TSS) | mg/L | 100 | MSGP |
| Aluminum Total | mg/L | 0.75 | MSGP |
| Arsenic Total | mg/L | 0.34 | CTR |
| Copper Total | mg/L | 0.013 | CTR* |
| Iron Total | mg/L | 1 | MSGP |
| Lead Total | mg/L | 0.069 | MSGP* |
| Nickel Total | mg/L | 0.42 | MSGP* |
| Silver Total | mg/L | 0.0318 | MSGP* |
| Zinc Total | mg/L | 0.11 | MSGP* |
| Cyanide Total (as CN) | mg/L | 0.022 | CTR |
| Nitrate + Nitrite Nitrogen | mg/L | 0.68 | MSGP |

*Hardness dependent in freshwater; assuming hardness of 100 mg/L CaCO3.

**Criteria - Basin Plan (BP), Freshwater**

| Parameter | Units | Water Quality Standard | Source |
|---|---|---|---|
| Arsenic Total | mg/L | 0.34 | BP |
| Cadium, Total | mg/L | 0.0039 | BP* |
| Chromium VI | mg/L | 0.016 | BP |
| Copper Total | mg/L | 0.0108 | BP (SSO) |
| Cyanide Total (as CN) | mg/L | 0.022 | BP |
| Lead Total | mg/L | 0.22 | BP |
| Mercury Total | mg/L | 0.0024 | BP |
| Selenium Total | mg/L | 0.29 | BP |
| Silver Total | mg/L | 0.0034 | BP* |
| Zinc Total | mg/L | 0.12 | BP* |
| Nickel Total | mg/L | 0.0624 | BP* (SSO) |

*Hardness dependent in freshwater; assuming hardness of 100 mg/L CaCO3.
SSO = Site Specific Objective

## Attachment 3: Alleged Dates of Violations by Premier Recycle Company, February 2008 to December 2012

Days with Precipitation One Tenth of an Inch or Greater, as reported by NOAA's National Climatic Data Center, Palo Alto station.  http://www7.ncdc.noaa.gov/IPS/coop/coop.html.

| 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|
| 2/20/2008 | 1/22/2009 | 1/18/2010 | 1/2/2011 | 1/21/2012 |
| 2/22/2008 | 2/5/2009 | 1/19/2010 | 1/30/2011 | 1/23/2012 |
| 2/23/2008 | 2/7/2009 | 1/20/2010 | 1/31/2011 | 2/14/2012 |
| 2/24/2008 | 2/9/2009 | 1/21/2010 | 2/16/2011 | 2/29/2012 |
| 2/25/2008 | 2/12/2009 | 1/22/2010 | 2/17/2011 | 3/14/2012 |
| 3/15/2008 | 2/13/2009 | 1/23/2010 | 2/18/2011 | 3/15/2012 |
| 10/4/2008 | 2/14/2009 | 2/5/2010 | 2/19/2011 | 3/17/2012 |
| 11/1/2008 | 2/15/2009 | 2/06/2010 | 2/20/2011 | 3/25/2012 |
| 11/2/2008 | 2/23/2009 | 2/09/2010 | 2/25/2011 | 4/1/2012 |
| 11/4/2008 | 3/2/2009 | 2/22/2010 | 3/6/2011 | 4/11/2012 |
| 11/26/2008 | 3/4/2009 | 2/24/2010 | 3/16/2011 | 4/13/2012 |
| 12/16/2008 | 3/5/2009 | 2/27/2010 | 3/19/2011 | 4/26/2012 |
| 12/19/2008 | 3/22/2009 | 3/2/2010 | 3/20/2011 | 10/22/12 |
| 12/22/2008 | 4/9/2009 | 3/3/2010 | 3/21/2011 | 10/23/12 |
| 12/23/2008 | 5/2/2009 | 3/4/2010 | 3/23/2011 | 10/24/12 |
| 12/25/2008 | 5/5/2009 | 3/9/2010 | 3/24/2011 | 11/1/12 |
|  | 9/22/2009 | 3/10/2010 | 3/25/2011 | 11/17/12 |
|  | 10/13/2009 | 3/12/2010 | 3/26/2011 | 11/18/12 |
|  | 10/14/2009 | 3/25/2010 | 3/28/2011 | 11/21/12 |
|  | 10/20/2009 | 3/30/2010 | 6/4/2011 | 11/29/12 |
|  | 12/06/2009 | 3/31/2010 | 6/5/2011 | 12/1/12 |
|  | 12/11/2009 | 4/1/2010 | 6/29/2011 | 12/2/12 |
|  | 12/12/2009 | 4/5/2010 | 10/4/2011 | 12/3/12 |
|  | 12/13/2009 | 4/12/2010 | 10/5/2011 | 12/5/12 |
|  | 12/27/2009 | 4/13/2010 | 10/7/2011 | 12/16/12 |
|  |  | 4/20/2010 | 10/11/2011 | 12/18/12 |
|  |  | 4/22/2010 | 11/4/2011 | 12/19/12 |
|  |  | 4/27/2010 | 11/6/2011 | 12/22/12 |
|  |  | 4/28/2010 | 11/20/2011 | 12/23/12 |
|  |  | 4/29/2010 |  | 12/24/12 |
|  |  | 5/11/2010 |  | 12/26/12 |
|  |  | 5/18/2010 |  | 12/27/12 |
|  |  | 5/26/2010 |  |  |
|  |  | 11/8/2010 |  |  |
|  |  | 11/20/2010 |  |  |
|  |  | 11/21/2010 |  |  |
|  |  | 11/27/2010 |  |  |
|  |  | 12/6/2010 |  |  |
|  |  | 12/17/2010 |  |  |
|  |  | 12/18/2010 |  |  |
|  |  | 12/19/2010 |  |  |
|  |  | 12/20/2010 |  |  |
|  |  | 12/22/2010 |  |  |
|  |  | 12/29/2010 |  |  |

## Attachment 4: Water Quality Standards

| Parameter | Units | Water quality standard | Source |
|---|---|---|---|
| Arsenic Total | mg/L | 0.069 | Basin Plan |
| Cadium, Total | mg/L | 0.042 | Basin Plan |
| Chromium VI | mg/L | 1.1 | Basin Plan |
| Copper Total | mg/L | 0.0108 | Basin Plan, Site Specific Objectives |
| Cyanide Total (as CN) | mg/L | 0.0094 | Basin Plan, Site Specific Objectives |
| Lead Total | mg/L | 0.22 | Basin Plan |
| Mercury Total | mg/L | 0.0021 | Basin Plan |
| Selenium Total | mg/L | 0.29 | California Toxics Rule |
| Silver Total | mg/L | 0.0019 | Basin Plan |
| Zinc Total | mg/L | 0.09 | Basin Plan |
| PAHs | mg/L | 0.015 | Basin Plan |
| Nickel Total | mg/L | 0.0624 | Basin Plan, Site Specific Objectives |