*E-Filed: January 6, 2013*

Sejal Choksi-Chugh (Bar No. 222093)
Andrea Kopecky (Bar No. 276366)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, California 94103
Telephone: (415) 856-0444
Facsimile: (415) 856-0443
Email: sejal@baykeeper.org
Email: andrea@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,      ) | No. C 13-01695 HRL |
|             Plaintiff,   ) | **[PROPOSED] ORDER OF ENTRY OF** |
|   v.              ) | **CONSENT DECREE, AND** |
|              ) | **DISMISSAL** |
| PREMIER RECYCLE COMPANY,   ) | |
|          Defendant.   ) | |

1    **[PROPOSED] ORDER OF ENTRY OF CONSENT DECREE, AND DISMISSAL**

2         WHEREAS, the Parties in the above captioned action have reached a settlement whose

3    specific terms are set forth in the [Proposed] Consent Decree, attached hereto as Exhibit A.

4         WHEREAS, as required by federal law, a copy of the [Proposed] Consent Decree was

5    mailed on November 8, 2013, to the U.S. Department of Justice ("DOJ") and to the U.S.

6    Environmental Protection Agency for a mandatory 45-day review period under Section 135.5

7    of Title 40 of the Code of Federal Regulations.  The 45-day review period commenced on

8    November 13, 2013, and terminated on December 30, 2013.

9         WHEREAS, DOJ approved the [Proposed] Consent Decree and submitted its approval

10   letter to the Court on December 30, 2013.  *See* Exhibit B.

11        IT IS HEREBY ORDERED that the [Proposed] Consent Decree is fully incorporated

12   herein by reference, and is entered as an Order of the Court.

13        IT IS FURTHER ORDERED that the Court shall retain jurisdiction over Case No. CV-

14   13-01695-HRL for the sole purpose of enforcing compliance by the Plaintiff and Defendant

15   with the terms of the [Proposed] Consent Decree.

16        IT IS FURTHER ORDERED that the above captioned action against Defendant is

17   dismissed with prejudice.

18        IT IS SO ORDERED.

Date:  _1/3/14_____ _                    NORTHERN DISTRICT OF CALIFORNIA

                                                   _____
                                                   Honorable Howard R. Lloyd
                                                   United States Magistrate Judge
                                                   United States District Court
                                                   Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

# EXHIBIT A

CONSENT DECREE

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, the Premier Recycle Company ("Premier Recycle") operates a recycling facility located at 260 Leo Avenue in San Jose, California (the "Facility").  Baykeeper and Premier Recycle are collectively referred to herein as the "Parties";

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter "Industrial Stormwater Permit").  These industrial activities include, inter alia, the collection, processing, and recycling of construction debris and other materials, the transportation of materials on and off site, storage of recyclable materials, equipment, and waste materials on site, truck and equipment operation, and other industrial activities related to the operation of a recycling facility;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including Premier Recycle:  1) develop and implement a stormwater pollution prevention plan ("SWPPP"), 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the

SWPPP, and, 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on February 11, 2013, Baykeeper served Premier Recycle, the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Regional Board, the U.S. Attorney General, and the Administrator of the EPA with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater Permit at the Facility;

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

I.    COMMITMENTS OF PREMIER RECYCLE

**1.**    In order to further reduce or further prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, Premier Recycle shall implement appropriate structural and non-structural Best Management Practices ("BMPs"), as required by the Industrial Stormwater Permit, as described more fully below.

**2.**    Site Map:  Within thirty (30) days of the Effective Date, to the extent it has not already done so, Premier Recycle shall update the Site Map included in the Facility SWPPP (see Exhibit 1).  The Site Map shall clearly denote the topography, storm drain locations, and the direction of stormwater flow for each distinct area of the Facility.  The Site Map shall also

identify property boundaries, known or suspected drop inlets, ground type (pervious or impervious), berms and the materials they are composed of, any permanent structures and features, discharge points, and all other physical structures or items relevant under the Industrial Stormwater Permit and in this Consent Decree.

3.      Designation and Protocol for All Sampling Locations:  Within thirty (30) days of the Effective Date, to the extent it has not already done so, Premier Recycle shall update the Facility SWPPP to fully describe any modifications to the discharge or sampling locations, as shown on the Site Map and described in the SWPPP ("Designated Discharge Point").  While the Consent Decree is in effect, if Premier Recycle makes any changes to the Designated Discharge Points at the Facility, Premier Recycle shall update the SWPPP within thirty (30) days and submit the revised SWPPP to Baykeeper, consistent with the requirements of Paragraph 12, below.

4.      Best Management Practices:  Premier Recycle shall develop and implement BMPs necessary to, at a minimum, comply with Effluent Limitation B(3) and Receiving Water Limitation C(2) of the Industrial Stormwater Permit, including the BMPs set forth in paragraphs 5 through 11 of this Consent Decree.

5.      Storm Drain Inlet/Catch Basin Best Management Practices:

    a.  Storm Drain Inlet Inspections:  Between September 1 and October 1 of each
        year, Premier Recycle shall inspect any storm drain inlets, catch basins,
        Designated Discharge Points, filtration/treatment devices, and other BMPs in
        place at the Facility.  For storm drains #2, #8, and #9, Premier Recycle shall
        promptly clean and remove any accumulated dust, dirt, or debris to ensure that
        they function properly.  For storm drain #1 and its associated catch basin and

pump, Premier Recycle shall clean and remove any accumulated materials to ensure that it is functioning properly. Premier Recycle shall inspect all other BMPs in use at the Facility, including filtration/treatment devices, storage devices, and pumps, to ensure they are working properly.

b. Storm Drain Inlet Maintenance and Cleaning: Weekly during the Wet Season (i.e., from October 1 to May 30 of each year that this Consent Decree is in effect) ("Wet Season"), and twice per month during the remainder of the year, Premier Recycle shall inspect all storm drain inlets, catch basins, Designated Discharge Points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris. This also includes checking sealed storm drains to ensure they are properly closed and not leaking. Premier Recycle shall properly dispose of any dust, sediment, debris, or other removed pollutants.

c. Log of Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance and Cleaning: Premier Recycle shall prepare and maintain a log of the Storm Drain Inlet Inspections, Maintenance and Cleaning described herein ("Maintenance Log"). The Maintenance Log shall indicate the staff who completed the maintenance activity and when it was completed. The Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business days of a request by Baykeeper.

6. Site Sweeping: By December 1, 2013, Premier Recycle shall sweep outdoor accessible paved areas of the Facility and any areas on public streets where Premier Recycle may

have operated at least once per day during days of operation, using the Tennant 6600 Sweeper. Premier Recycle shall keep a log or checklist, as appropriate, of the on-site sweeping activity performed ("Sweeping Log"), and shall direct employees and/or contractors to accurately complete the Sweeping Log. Premier Recycle shall maintain the log attached as Exhibit 2, as part of the Facility's Storm Water Pollution Prevention Plan. The Sweeping Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business day advance request by Baykeeper.

7.      Elimination of Stormwater Discharges:  By December 1, 2013, Premier Recycle shall eliminate stormwater discharges originating from industrial activities located upgradient from catch basin number 1 at the Facility.  Premier Recycle shall:

a. Install an appropriately sized inflatable blocking pipe plug into the storm drain pipe immediately downstream from storm drain #1 to completely block, without bypass, all stormwater originating from the site from entering the municipal separate sewer system ("MS4").  Premier Recycle shall inspect the drain once per month for signs of deflation and corrosion. The drain plug shall be replaced at any signs of potential leakage or failure.  Premier Recycle shall replace the plug as needed.

b. Install an appropriately sized pump system at the catch basin underneath storm drain #1 to pump any stormwater or non-stormwater either to an on-site storage tank(s) for future use in dust suppression activities or to on-site depressions capable of providing detention, located south of the elevated crest referred in the Facility SWPPP as the "crown crest" (see Exhibit 1). Stormwater detained on-site shall be permitted to evaporate, soak into waste

or recyclable materials prior to appropriate disposal, or be utilized for dust
suppression activities. Premier Recycle must not discharge any stormwater or
non-stormwater originating from industrial activities upgradient from catch
basin number 1.

8.   If it becomes infeasible for Premier Recycle to eliminate all storm water discharges
originating from industrial activities located upgradient from catch basin number 1 at the
Facility, Premier Recycle shall propose and submit to Baykeeper an Alternative BMP Plan.
Baykeeper shall have thirty (30) days from receipt to propose revisions to the Alternative BMP
Plan.  Within thirty (30) days of receiving Baykeeper's revisions, Premier Recycle shall agree or
disagree with Baykeeper's proposed revisions.  Premier Recycle shall provide to Baykeeper a
revised Alternative BMP Plan incorporating Baykeeper's revisions and/or a letter explaining
why any proposed revisions were not incorporated.  Any disputes as to the contents of an
Alternative BMP Plan shall be resolved pursuant to the dispute resolution provisions of this
Consent Decree.

9.   Pavement Washing: By December 1, 2013, Premier Recycle shall spray wash
the paved area of the site north of the crown crest at least once per day to reduce tracking of
pollutants off site.  Wash water shall be collected in the catch basin at storm drain #1 and
pumped to a storage tank(s) or south of the crown crest for reuse, disposal, or be allowed to
evaporate.

10.   Training: By December 1, 2013, and annually thereafter, and within thirty (30)
days of hiring of new employees, Premier Recycle shall conduct training for all appropriate
employees to explain the requirements of the Facility's SWPPP to the extent applicable to such
employee.  Training shall focus on 1) the employee's role in implementing various stormwater

control measures including, for example, implementation of BMPs, sweeping, vehicle maintenance, or facility inspections, and 2) strategies for reducing the release of pollutants that could reach stormwater during rain events.  Training shall be conducted bilingually (i.e., Spanish/English or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English.  If and when appropriate, Premier Recycle shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP. Premier Recycle shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

    **11.**    Maintenance of BMP Structural Controls:   By December 1, 2013, Premier Recycle shall maintain structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

    **12.**    Amendment of SWPPP:  Within thirty (30) days of the Effective Date, Premier Recycle shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in Paragraphs 5 through 11 of this Consent Decree and thereafter submit the updated SWPPP to Baykeeper within ten (10) business days.  Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP.  Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, Premier Recycle shall incorporate Baykeeper's changes into the amended SWPPP, or shall justify in writing why any comment is not incorporated. Compliance with the SWPPP, as amended in accordance with this paragraph provision, shall at all times be a requirement of this Consent Decree.

    III.    SAMPLING, MONITORING, INSPECTION & REPORTING

**13.**     Sampling Program:  Beginning December 1, 2013, if at any time Premier Recycle discharges stormwater or non-stormwater from the Facility, Premier Recycle shall collect and analyze the samples for the parameters in Exhibit 3.  Premier Recycle shall notify Baykeeper within three (3) business days of such discharge.

**14.**     Certified Lab:  Premier Recycle shall have all samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the levels set forth in the attached Exhibit 3.

**15.**     Sample Result Reporting:  After the Effective Date, Premier Recycle shall provide complete results from sampling and analysis to Baykeeper within fourteen (14) calendar days of receipt of the laboratory report from each sampling event.

**16.**     Action Plan:  If any stormwater or non-stormwater discharges occur during the term of the Consent Decree, Premier Recycle must collect samples as detailed in Paragraph 13 above.  Within thirty (30) days of receiving the laboratory report, Premier Recycle must submit to Baykeeper an Action Plan.

**17.**     Contents of Action Plan:  If an Action Plan is required, it shall set forth:  1) whether the discharge was stormwater, non-stormwater, or both, 2) reasons that a discharge occurred, 3) whether the discharges exceeded Target levels in Exhibit 3, 4) how Premier Recycle will address the discharge(s) and prevent future discharges, and 5) a timeline for making changes at the Facility to prevent future discharges.

**18.**     Baykeeper Review of Action Plan:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's

revisions, Premier Recycle shall agree or disagree with Baykeeper's proposed revisions. Premier Recycle shall provide to Baykeeper a revised Action Plan incorporating Baykeeper's revisions and/or a letter explaining why any proposed revisions were not incorporated. Any disputes as to the contents of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree.

19.     Premier Recycle shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

20.     Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Consent Decree are implemented, Premier Recycle shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP. Within thirty (30) days thereafter, Premier Recycle shall provide Baykeeper with a copy of such revised SWPPP.

21.     Stipulated Payments:  Premier Recycle shall pay the following stipulated payments during the Term of this Consent Decree:

      a.  Beginning with the 2014-2015 Wet Season, five hundred dollars ($500) for any discharge of stormwater or non-stormwater per storm event from the Facility that exceeds the levels attached in Ex. 3.  Discharges resulting from a storm event equivalent to or more than the 24-hour 10-year storm shall not apply to this paragraph[1];

      b.  Five  hundred dollars ($500) for failure to collect a sample of any discharge of stormwater or non-stormwater from the Facility;

---

[1] For Premier Recycle's location, the lower-bound estimate of the 24-hour 10-year storm is 2.26 inches, based on data from the National Oceanic and Atmospheric Administration (available here: http://hdsc.nws.noaa.gov/hdsc/pfds/pfds_map_cont.html?bkmrk=ca). For the purposes of this agreement, pollutant concentration exceedances associated with 24-hour precipitation depths in excess of 2.26 inches shall not be subject to stipulated payments.

c.  In the event that Premier Recycle fails to submit to Baykeeper any document, report or other communication required in this Consent Decree within five (5) days of its due date, Premier Recycle shall pay a late payment of one hundred dollars ($100) per day; and

d.  Any stipulated payments described above shall be paid by September 1st of each year this Consent Decree is in effect to the Rose Foundation for the Environment, 1970 Broadway, Suite 600, Oakland, CA 94612-2218, Attn: Tim Little, with a copy of payment sent concurrently to Baykeeper. Stipulated payment funds will be used by the Rose Foundation to fund projects that benefit water quality in the San Francisco Bay watershed.  In no case shall any of the funds be received by Baykeeper.

22.     Reduction in Stipulated Payments:  Premier Recycle shall be allowed a fifty percent (50%) reduction of any stipulated payments due in any given calendar year pursuant to the preceding paragraphs if Premier Recycle tenders the reduced payment, payable to the Rose Foundation, to Baykeeper along with a certification signed under penalty of perjury stating that Premier Recycle will, within one year, spend or be under contract to spend the balance of the sum that would otherwise be due as a stipulated payment on alternative environmental enhancements.  Permissible alternative environmental enhancements shall include:  (a) covering activities at the Facility including the construction of canopies over processing, operation, or material storage areas; (b) the acquisition of an improved stormwater filtration system (including any stormwater retention capacity integrated with the filtration system); or (c) construction and operation of the appurtenances needed to discharge stormwater runoff from the Facility to a publicly owned treatment works sanitary sewer system provided that Premier Recycle include as

part of this sewer connection project the construction and operation of stormwater retention devices (such as retention ponds, basins, or tanks) to allow storage of stormwater for disposal after peak rainfall-related sewer collection system flows have subsided. Premier Recycle must further submit within thirty (30) days of completing the foregoing alternative environmental enhancement project a subsequent notice to Baykeeper explaining how Premier Recycle expended the funds and how this expenditure met the required terms. If Premier Recycle fails to meet all conditions of this paragraph, then it must pay the balance of the stipulated payment sum not yet paid within twelve (12) months from the date the payment was originally due.

23.     Site Access: During the Term of this Consent Decree, Premier Recycle shall permit representatives of Baykeeper to perform one (1) physical inspection per year of the Facility during operating hours ("Site Inspection"). Baykeeper shall provide Premier Recycle forty-eight (48) hours notice in advance of such Site Inspection, and Premier Recycle shall have the right to deny access if circumstances would make the Site Inspection unduly burdensome and pose significant interference with business operations. In such case, Premier Recycle shall specify at least three (3) days within the next three (3) weeks upon which a Site Inspection may proceed during normal business hours, and the Parties shall agree upon the inspection date. Baykeeper shall comply with all safety instructions provided to Baykeeper by Premier Recycle staff during all Site Inspections. During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater or non-stormwater discharges. If Baykeeper takes photographs and/or video recording, Baykeeper shall provide Premier Recycle with the photographs and/or video within fourteen (14) days after the Site Inspection. Baykeeper agrees that all individuals who will participate in a Site Inspection will execute a waiver and release (example attached as

Exhibit 4) prior to the Site Inspection.  Baykeeper also agrees that all individuals who will participate in the Site Inspection will sign a sign-in sheet when they arrive at the Facility.

24.     Reports:  During the Term of this Consent Decree, Premier Recycle shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail, if feasible, or by U.S. Mail when electronic transmission is not feasible, at the time the documents are due to be submitted to the Regional Water Board or State Water Board.

IV.     MITIGATION, FEES, AND COSTS

25.     Environmental Mitigation Funding:  As mitigation for the alleged violations set forth in Baykeeper's Notice and Complaint, within thirty (30) days of the Effective Date, Premier Recycle shall pay the sum of eight thousand dollars ($8,000) to the Rose Foundation for the Environment, an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed.  The Rose Foundation shall report the grant funding made with the tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds.  Payment shall be made to the Rose Foundation for the Environment, 1970 Broadway, Suite 600, Oakland, CA 94612-2218, Attn: Tim Little, within thirty (30) days of the Effective Date, with notice to Baykeeper.

26.     Reimbursement of Fees, Costs, and Oversight:  Premier Recycle shall reimburse Baykeeper in the amount of twenty-one thousand dollars ($21,000) to help defray Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to Premier Recycle's attention, and negotiating a

resolution of this action in the public interest, and oversight and monitoring of Premier Recycle's compliance with this Consent Decree.  Premier Recycle shall tender an initial payment of $10,500, payable to Baykeeper, within sixty (60) days of the Effective Date.  The second payment of $10,500, payable to Baykeeper, shall be made within ninety (90) days of the Effective Date.

27.     Dispute Resolution: If a dispute under this Consent Decree arises, or the Parties believe that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within fourteen (14) business days of receiving written notification from the other Party of a request for a meeting to determine the merits of the dispute and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least fourteen (14) business days have passed after the meet and confer occurred or should have occurred, the Parties may submit the dispute via motion in the United States District Court for the Northern District of California. The parties shall be entitled to seek reasonable attorney fees and costs incurred in bringing any such motion, and such fees and costs shall be awarded pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provisions, or any other applicable legal authority.

V.     JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE CONSENT DECREE

28.     Jurisdiction.  For the purposes of this Consent Decree, the Parties stipulate that the United States District Court of California, Northern District of California, has jurisdiction over the Parties and subject matter of this Consent Decree.  The Parties stipulate that venue is appropriate in the Northern District of California and that Premier Recycle will not raise in the

future as part of enforcement of this Consent Decree whether Baykeeper has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

29.     Jurisdiction to Enforce Consent Decree.  This Court shall retain jurisdiction over this matter for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

30.     Submission of Consent Decree to DOJ.   Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, Baykeeper shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

VI.     WAIVER, RELEASES AND COVENANTS NOT TO SUE

31.     Baykeeper Waiver and Release of Noticed Parties and Covenant Not to Sue: Upon the Effective Date, Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns covenants not to sue Premier Recycle or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, or other representatives with respect to any stormwater discharges from the Facility that arose before or may arise during the Term of this Consent Decree.  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns

releases Premier Recycle or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

**32.**     Premier Recycle's Waiver and Release of Baykeeper:  Premier Recycle, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

VII.    MISCELLANEOUS PROVISIONS

33.     Effective Date:  The Effective Date of this Consent Decree shall be the last day for the U.S. Department of Justice to provide comment on this Consent Decree, i.e., the 45th day following the U.S. Department of Justice's receipt of the Consent Decree.

**34.**     Term of Consent Decree:  This Consent Decree shall continue in effect until September 30, 2015 (the "Term"), at which time the Consent Decree, and all obligations under it, shall automatically terminate.  The waivers, releases, and covenants contained in paragraphs 31-32, inclusive, of this Consent Decree shall survive the termination of this Consent Decree.

35.    Execution in Counterparts:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

36.    Signatures:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

37.    Construction:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

38.    Authority to Sign:  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

39.    Integrated Consent Decree:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

40.    Severability:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

41.    Choice of Law:  This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

42.    Full Settlement:  This Consent Decree constitutes a full and final settlement of this matter.

**43.** Negotiated Agreement: The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

**44.** Modification of the Agreement: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

**45.** Assignment: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

**46.** Mailing of Documents to Baykeeper/Notices/Correspondence: Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Baykeeper:

Andrea Kopecky
San Francisco Baykeeper
785 Market Street, Suite 850
San Francisco, CA 94103
E-mail: andrea@baykeeper.org

Unless requested otherwise by Premier Recycle, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Premier Recycle pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail

transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Premier Recycle:

Brock Hill
348 Phelan Avenue
San Jose, CA  95112
E-mail:  brock@premierrecycle.com

William W. Funderburk, Jr.
Anna L. Le May
811 Wilshire Boulevard, Suite 1025
Los Angeles, CA  90017
wfunderburk@candffirm.com
alemay@candffirm.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any changes of address or addressees shall be communicated in the manner described above for giving notices.

**47.**    Impossibility of Performance:  No Party shall be considered to be in default or breach in the performance of any of its obligations under this Consent Decree when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, flood, and restraint imposed by law, by court order or public authority. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

48.     If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

49.     The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.


SAN FRANCISCO BAYKEEPER

Date: 11/8/13

Andrea Kopecky
Staff Attorney, San Francisco Baykeeper


PREMIER RECYCLE COMPANY

Date:   November 7, 2013

Robert Hill
President, Premier Recycle Company

APPROVED AND SO ORDERED, this ___ day of _____.


UNITED STATES DISTRICT JUDGE


_____

EXHIBIT 1



EXHIBIT 2

Premier Recycle Company Sweeping Log

Date: _____

Personnel (initials): _____

| Area | Description |
|---|---|
| | **Description**<br>Outdoor accessible paved areas of the Facility and any areas on public streets where Premier Recycle may have operated are swept at least once per day during days of operation, using the Tennant 6600 Sweeper. |
| Front of Shop (Area surrounding DI #1,2,8,9) | Done ☐ |
| Front of Metal Storage Area | Done ☐ |
| Front of Unloading/Sorting area | Done ☐ |
| Front of Break Room Area/Temp Storage Area | Done ☐ |
| Area Surrounding Scale House | Done ☐ |
| Leo Ave North of Driveway Entrance | Done ☐ |

# Exhibit 3

## Target Levels for Sampling

| Parameter | Target Level | Target Reference |
|---|---|---|
| pH | 6.5 – 8.5 SU | RWQCB Basin Plan |
| Total Suspended Solids | 100 mg/L | Multi-Sector General Permit 2008 Sector-specific benchmark |
| Chemical Oxygen Demand (COD) | 120 mg/L | Multi-Sector General Permit 2008 Sector-specific benchmark |
| Aluminum | 0.75 mg/L | Multi-Sector General Permit 2008 Sector-specific benchmark |
| Copper* | 0.0156 mg/L | Multi-Sector General Permit 2008 Sector-specific benchmark |
| Iron | 1.0 mg/L | Multi-Sector General Permit 2008 Sector-specific benchmark |
| Lead* | 0.095 mg/L | Multi-Sector General Permit 2008 Sector-specific benchmark |
| Zinc* | 0.13 mg/L | Multi-Sector General Permit 2008 Sector-specific benchmark |

*Sector-specific benchmarks for these parameters are contained in the 2008 Multi-Sector General Permit, but are hardness dependent.  Hardness calculations are appropriate for discharges to freshwater (*see* http://water.epa.gov/scitech/swguidance/standards/current/index.cfm#appendxb; http://www.waterboards.ca.gov/sanfranciscobay/water_issues/programs/planningtmdls/basinplan/web/bp_ch3.shtml).  Benchmark values based on an assumed hardness of 100-125 mg/L in freshwater receiving waters.

# EXHIBIT 4

**Release And Waiver Of Liability**

I understand that I am being permitted to enter the premises located at 260 Leo Avenue, San Jose, California (the "site") for a property inspection and agree to the following:

My entry onto the above-mentioned property is entirely voluntary and I agree to indemnify, defend, hold harmless and release Premier Recycle Company, its shareholders, officers, directors, employees, agents, attorneys, trustees, beneficiaries, and any other representative(s) affiliated with the property and operations at the site (collectively "Premier") from any and all lawsuits, damages, claims, judgments, losses, liability, or expenses arising out of or resulting from any damage or loss to myself, including any tools and equipment I am bringing onto the site, Premier, or others, which may be caused in whole or in part as a result of my entry onto the site, whether or not caused by the alleged negligence, whether active or passive, or any acts or omissions of Premier, or by any of the Premier's licensees, invitees, or permittees also on the site or any other third party not under Premier's control to the extent permitted by California law.

I REPRESENT AND ACKNOWLEDGE THAT I HAVE READ THIS ASSUMPTION OF RISK, RELEASE AND WAIVER OF LIABILITY AND FULLY UNDERSTAND EACH AND EVERY PROVISION.

Dated: _____          Name
                                 (Printed):_____

# EXHIBIT B



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-03658

_____

*Law and Policy Section*                                    *Telephone (202) 514-1442*
*P.O. Box 7415*                                             *Facsimile (202) 514-4231*
*Ben Franklin Station*
*Washington, DC  20044-7415*

December 30, 2013

Clerk's Office
U.S. District Court
Northern District of California, San Jose
Robert F. Peckham Federal Building
280 South 1st Street
San Jose, CA 95113

> Re:   <u>San Francisco Baykeeper v. Premier Recycle Company</u>, United States District
> Court for the Northern District of California, Case No. 5:13-cv-1695

Dear Clerk of Court:

I am writing to notify you that the United States has reviewed the proposed consent judgment in this action and does not object to its entry by this Court.

On November 13, 2013, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent judgment in the above-referenced case for review pursuant to Clean Water Act, 33 U.S.C. § 1365(c)(3).  This provision provides, in relevant part:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

<u>See</u> <u>also</u> 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice).  A settlement that does not undergo this federal review process is at risk of being void.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. <u>See</u> <u>Local 93, Int'l Ass'n of Firefighters v. City of Cleveland</u>, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a supplemental environmental project (SEP) payment sufficient to deter future violations, or combinations of the above.

In this case, the Plaintiff alleged violations of section 301 of the Clean Water Act, 33 U.S.C. § 1311, for the unlawful discharge of pollutants and violations of storm water permit requirements. In terms of injunctive relief, the consent decree provides that the Defendant amend its current Storm Water Pollution Prevention Plan to incorporate storm water pollution prevention measures and develop and implement specified Best Management Practices. The consent decree provides for, *inter alia*, pavement washing, employee training, structural control maintenance, and specified storm water sampling and reporting. In the event of certain exceedances, the Defendant will develop and implement an Action Plan, which is subject to Plaintiff's review and comment. The Defendant's facility will also be subject to one site inspection per year by Plaintiff during the life of the consent decree.

This consent decree also provides that the Rose Foundation will receive a total payment of $8,000 for SEPs to benefit the San Francisco watershed. The consent decree further provides that, in the event of certain exceedances or future missed deadlines by the Defendant, the Defendant shall pay additional stipulated amounts to Rose Foundation. Here, "the San Francisco watershed" describes a very large area that may not ensure that the selected project will be within the immediate geographic area of the alleged violation. The United States encourages the parties to select projects that are in the immediate geographic area of the alleged violations when possible. Similarly, to better enable the United States and courts to evaluate the appropriateness of a proposed consent judgment, parties are generally encouraged to specify a particular project or type of project that SEP funds will be used for, particularly where, as here, a significant monetary contribution is involved. The project should have a sufficient nexus to the alleged violation. See, e.g., EPA Final Supplemental Environmental Projects Policy at 7 n. 5 (April 10, 1998). Where the parties are unable to identify a particular project or type of project at the time they lodge a proposed consent judgment, the United States requests to be informed when a project is ultimately selected as to the nature of such a project.

Where a consent judgment provides for the possible payment of sums to a third party that is to undertake a SEP, the United States ordinarily requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax-exempt entity and that it (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent. On November 13, 2013, the United States received from the Rose Foundation a letter confirming that all funds received by the organization as a result of the consent judgment would be used solely for the purpose outlined in the decree and that The Rose Foundation agrees not to use any of the funds it receives to conduct a SEP to fund political lobbying activities; a copy of that letter is attached. The United States believes that this letter will help to ensure that any monies expended under the consent judgment will be used in a manner that furthers the purposes of the Act, and that is consistent with the law and the public interest.

Given these representations, the United States has no objection to the entry of the proposed consent judgment. We accordingly notify the Court of that fact.

The United States affirms for the record that it is not bound by this settlement. See, e.g., Hathorn v. Lovorn, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to

which he was not a party); <u>Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.</u>, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); <u>Sierra Club v. Electronic Controls Design</u>, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party). The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications. <u>See</u> 33 U.S.C. §1365(c)(3).

We appreciate the attention of the Court. Please contact the undersigned at (202) 514-3473 if you have any questions.

Sincerely,

*/s/ Ragu-Jara Gregg*

_____
Ragu-Jara Gregg, Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C.  20044-4390

cc:      Counsel on Record via ECF

Attachment



WWW.ROSEFDN.ORG

ROSE
FOUNDATION
for COMMUNITIES
and the ENVIRONMENT

1970 BROADWAY, SUITE 600, OAKLAND, CA 94612-2218
ROSE@ROSEFDN.ORG

OFFICE: 510.658.0702
FAX: 510.658.0732

11/12/13

Sarah Lu
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

<u>Re:  San Francisco Baykeeper v. Premier Recycle Company (13-01695-HRL)</u>

Dear Ms. Lu,

This letter is intended to provide assurance that I have received the proposed Consent Decree between San Francisco Baykeeper and Premier Recycle Company, and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Premier Recycle Company as specified in the Consent Decree. These funds may include stipulated payments as well as a mitigation payment.

2) The Rose Foundation shall only use these Premier Recycle Company funds to support projects that will benefit the San Francisco Bay watershed.

3) After the funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the Court and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772).  Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

• Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not fund political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

• Work directly in schools and in the community to encourage environmental stewardship and civic participation.

• Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.

- Protect the natural environment, public health, and community and consumer rights.

- Promote collaboration between labor, environmental, business, consumer and social interests.

- Cultivate a new generation of environmental stewards and social policy leaders.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors.  Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then makes recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Levy and Powers are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require.  Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director